ALFRED C. BALDWIN, TRUSTEE, vs. JENNIE H. WOLFF.

Third Judicial District, Bridgeport, October Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

The funds of a corporation cannot lawfully be withdrawn and used to adjust equities between subscribers to its capital stock arising out of their respective subscriptions; and a director who knowingly receives and appropriates to his own use the corporation's money for such a purpose, is chargeable with constructive fraud, and is bound to refund the amount to a trustee in bankruptcy for the benefit of the creditors of the insolvent corporation.
The rules of equity now govern in all civil actions.

A complaint alleging that a shareholder fraudulently and without consideration withdrew funds of a corporation, does not lay the foundation for a claim that, in addition to the sum actually withdrawn, he should be held accountable indirectly, as a member of a copartnership, for a benefit received by it pursuant to an agreement of the incorporators.

The statement, in a certificate of incorporation, that all the shares of stock of the corporation have been paid for estops its signers from afterward asserting the contrary as against those who may become creditors of the corporation.

Argued November 2d—decided December 17th, 1909.

ACTION by the trustee in bankruptcy of a corporation, to recover moneys fraudulently withdrawn from its treasury by a shareholder, brought to the Superior Court in New Haven County and tried before *Shumway, J.* Judgment for plaintiff. Each party appealed. *No error on either appeal.*

*Edward A. Harriman,* for the plaintiff.

*Edward H. Rogers* and *Frank Kenna,* for the defendant.

BALDWIN, C. J. The defendant, being the owner of a retail millinery business, gave a quarter interest in it to her stepson Charles J. Halper. They became copartners in the business, under the name of J. Halper & Company, and on December 11th, 1905, the firm (her interest being three times as much as his) owned a stock in trade worth over $9,000, and owed $2,000 to one Max Abrahammer. He agreed with the copartners that the copartnership should be converted into a corporation with a capital stock of four hundred and twenty shares of the par value of $25 each; each of the three to subscribe for one hundred and forty shares. Mrs. Wolff and Halper, as copartners, were to transfer their stock in trade to the corporation at an agreed valuation of $7,000; Abrahammer was to advance $2,000 to retire and discharge the partnership liabilities; and the corporation was to receive the stock in trade at the valuation of $9,000,

in payment for so much of the capital stock of the corporation as should not be paid up in cash.

Thereupon the subscriptions were made as agreed, and a corporation organized under the joint-stock incorporation laws of this State by the name of The Samuel Halper Company, to which Halper & Company transferred their stock in trade, and Abrahammer paid $1,572.39. He also then discharged the debt of $2,000 which the firm owed him. Of the $1,572.39, $1,500 was the remainder of his stock subscription, over and above the firm indebtedness to him of $2,000 so discharged; and $72.39 represented a third interest in certain firm assets which had not been taken into account when the agreement to form a corporation was made.

The three shareholders filed a certificate of organization stating that $3,500 had been paid up in cash, and $7,000 in property other than cash, and that $25 had been paid upon each of the four hundred and twenty shares subscribed for. Each was a director and all signed the certificate.

On the record book of the corporation was an entry, also signed by all three, as directors, that its property consisted of a stock of millinery and merchandise, book-accounts, and furniture and fixtures purchased from J. Halper & Company "the value at which said property was received being seven thousand dollars and the actual value of which is more than seven thousand dollars."

It is evident that the practical result of the whole transaction was to make each of the three the apparent owner of one hundred and forty shares of the full-paid capital stock of the corporation, and to make the corporation owner of a stock in trade worth over $9,000, and cash to the amount of over $1,500. As between Mrs. Wolff and Mr. Halper, she had paid $1,750 for his benefit; this being the difference between one quarter of $7,000 (that is, $1,750), which was the value of his interest in the partnership, and the par value of his one hundred and forty shares (that is, $3,500).

A few days after the incorporation, he, as treasurer of the

Samuel Halper Company, paid her, from its funds (as she well knew) $1,917.39. Of this, $167.39 was for her three-quarters interest in certain assets of the firm that had not been taken into account when the agreement to incorporate was made. The balance (that is, $1,750) she claimed as the difference between the par value of her shares (that is, $3,500) and her three-fourths interest in the stock in trade, appraised at $7,000 net.

This was an unwarranted attempt to adjust the equities between the former partners by the use of corporate funds. The agreed basis of incorporation was the acquisition of the stock in trade of a going concern at a fixed valuation, in exchange for shares of stock. It had been in fact acquired in that manner. Mrs. Wolff, having stated in the certificate of organization that Charles J. Halper's shares of the corporate stock of the company had been fully paid up, could not, as against those who might become creditors of the corporation, assert that those shares had not been so paid up. *Canfield* v. *Gregory*, 66 Conn. 9, 22, 33 Atl. 536. The plaintiff, as trustee in bankruptcy, represents such creditors. He was entitled to recover the $1,750 so paid to the defendant without consideration.

He alleged that she withdrew the money fraudulently. The court does not, in the special finding of facts, state that there was any fraud. Facts are, however, stated from which, by the rules of equity, it is implied. These rules now govern in all civil actions. General Statutes, § 532. As Mrs. Wolff was a director, and thus occupied a position as to creditors of a fiduciary nature, when she knowingly took from the company's treasury what did not belong to her, she was chargeable with constructive fraud.

The plaintiff contends that his judgment should have included all the cash which the certificate of organization stated to have been paid in, that is, $3,500, inasmuch as the firm of Halper & Company got the benefit of the $2,000 for which full-paid shares were issued to Abrahammer. It is

true that they received that benefit; but the complaint is not adapted to the claim thus made. It is unnecessary, therefore, to inquire as to its merits. The averment is that Mrs. Wolff individually withdrew $3,500 in cash from the company's treasury. The proof was that (except as to a small sum concerning which no suggestion of illegality is made) she withdrew only the sum for which judgment was rendered against her. No charge of indirect accountability, as a member of a copartnership, by reason of the agreement between the incorporators or anything done under it, is contained in the pleadings. Had it been, no doubt the court would have ordered her copartner to be cited in; and it may well be that in such a case other facts, not now presented upon the record, would have appeared, which would have been material to the determination of such a claim

There is no error on either appeal.

In this opinion the other judges concurred.